IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CENDIX, INC.,** *an Oregon corporation*, | Case No. 3:24-cv-00911-IM |
| Plaintiff, | |
| v. | **OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |
| **TSYS MERCHANT SOLUTIONS, LLC,** *an Indiana corporation*, | |
| Defendant. | |

Kevin C. Brague, The Brague Law Firm, 4504 S. Corbett Ave., Ste. 250, Portland, OR 97239. Attorney for Plaintiff.

Julia E. Markley and David Watnick, Perkins Coie LLP, 1120 N.W. Couch St., 10th fl., Portland, OR 97209. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Before this Court is a Petition to Compel Arbitration filed by Defendant TSYS Merchant Solutions, LCC ("TSYS"). Petition to Compel Arbitration ("Pet."), ECF 11. Plaintiff Cendix, Inc. ("Cendix") opposes arbitration. Plaintiff's Opposition to Defendant's Petition to Compel Arbitration ("Opp'n"), ECF 13. This Court has jurisdiction under 28 U.S.C. § 1332. Because the

parties entered into a valid agreement containing a binding arbitration clause, Defendant TSYS's Motion to Compel Arbitration is GRANTED. Defendant moved in the alternative to dismiss the complaint; because this Court grants the petition to compel arbitration, that motion is DISMISSED as moot. This action shall be stayed pending arbitration of Cendix's claims pursuant to 9 U.S.C. § 3.

## LEGAL STANDARDS

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Courts may decline to enforce an arbitration agreement if grounds "exist at law or in equity for the revocation of any contract." *Id.* Otherwise, courts must treat arbitration agreements the same as other contracts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). "Courts strongly favor arbitration and broadly construe arbitration clauses." *Sanders v. Concorde Career Colls., Inc.*, 3:16-CV-01974-HZ, 2017 WL 1025670, at *2 (D. Or. Mar. 16, 2017) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). "The standard for demonstrating arbitrability is not high." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).

When evaluating a motion to compel arbitration, courts should determine: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). When determining the validity of an agreement to arbitrate, a court "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). If the court finds that there is a valid agreement that encompasses the dispute, then the court must enforce the agreement in accordance with its terms. Arbitration agreements may be invalidated by generally applicable contract defenses, such as duress or unconscionability. 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339

PAGE 2 – OPNION AND ORDER GRANTING MOTION TO COMPEL ARBITRATION

(2011); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Upon granting a petition

to compel arbitration, district courts must stay the proceeding. 9 U.S.C. § 3; *Smith v. Spizzirri*,

144 S. Ct. 1173, 1177–78 (2024).

## BACKGROUND[1]

### A.  Cendix and TSYS's Agreement

On February 22, 2019, Plaintiff Cendix's President, Wilson Zehr, signed an agreement

with Defendant TSYS for TSYS to process Automated Clearing House ("ACH") transactions

and credit card payments for Cendix. Merchant Transaction Processing Agreement

("Agreement"), ECF 11-2, Ex. A. TSYS requires all of its merchant partners, such as Cendix, to

execute the Agreement before TSYS will provide payment processing services. Declaration of

Heidi Keryan ("Keryan Decl."), ECF 11-1 ¶¶ 4–5.

The Agreement contains a section titled "Agreement Acceptance." ECF 11-2, Ex. A at 4.

Under this heading, the Agreement states:

> By their execution below the undersigned parties agree to abide by the Merchant
> Transaction Processing Agreement (the "AGREEMENT"). The AGREEMENT
> consists of the Merchant Application and the Terms and Conditions (a separate
> attachment hereto), and MERCHANT acknowledges it has received and read the
> Terms and Conditions at the time of signing.

ECF 11-2, Ex. A at 4.

The Terms and Conditions in turn contain a clause requiring arbitration of any disputes

among the parties. That arbitration clause provides in relevant part:

---

[1] "On a motion to compel arbitration, the court applies a standard similar to the summary
judgment standard applied under Rule 56 of the Federal Rules of Civil Procedure." *Stover-Davis
v. Aetna Life Ins. Co.*, No. 1:15-CV-1938-BAM, 2016 WL 2756848, at *3 (E.D. Cal. May 12,
2016) (quoting *Alvarez v. T-Mobile USA, Inc.*, No. CIV. 2:10-2373 WBS GGH, 2011 WL
6702424, at *3 (E.D. Cal. Dec. 21, 2011)). So long as evidence presented could be made
admissible at trial, this Court can consider it for purposes of resolving the motion to compel
arbitration. Accordingly, the facts for this Section are derived from the Complaint, ECF 1, and
the exhibits provided by the parties, ECF 11, 13, and 14.

Arbitration. The parties agree that any dispute regarding, arising out of, or relating to this agreement, any transaction governed by this agreement, any guaranty contained herein, or the parties' relationship, including the scope and validity of this agreement or any guaranty contained herein (including the validity and scope of the arbitration obligations under this section, which the parties acknowledge is to be determined by an arbitrator and not a court), must be exclusively resolved by binding arbitration upon a party's submission of a dispute to arbitration under the authority of the Federal Arbitration Act which is administered by the American Arbitration Association in accordance with its commercial arbitration rules.

Terms and Conditions, ECF 11-3 § 13.3 (capitalization altered).

It is undisputed that Zehr signed the Agreement on behalf of Cendix, acknowledging he received and read the Terms and Conditions. Declaration of Wilson Zehr ("Zehr Decl."), ECF 14 ¶ 3; Agreement, ECF 11-2, Ex. A at 4.

**B.  Cendix's Lawsuit and Defendant's Motion to Compel Arbitration**

After entering into the Agreement in 2019, TSYS processed ACH transactions for Cendix for five years. Complaint ("Compl."), ECF 1 ¶¶ 6–10. TSYS would approve customers' payments, and then Cendix would fulfill customers' orders. *Id.* ¶ 9. Cendix alleges that in March 2024, TSYS approved transactions from a Cendix customer whose bank account had been closed, leading Cendix to fulfill that order and subsequent orders by the same customer. Compl., ECF 1 ¶¶ 10–11. Cendix alleges that TSYS then placed a hold on Cendix's account, withholding $218,981.96 in credit card payments belonging to Cendix. Compl., ECF 1 ¶¶ 12–14.

In June 2024, Cendix filed a complaint, alleging TSYS lacked any basis to withhold the disputed payments. Compl., ECF 1 ¶ 1. Cendix alleges conversion in the amount of $218,981.96 and a breach of the implied covenant of good faith and fair dealing, and seeks damages, declaratory and injunctive relief, and attorney's fees. Compl., ECF 1 ¶¶ 17–28.

Defendant TSYS now petitions to compel arbitration and, in the alternative, moves to dismiss. Pet., ECF 11. Cendix filed a Response in Opposition to Defendant's Petition to Compel

Arbitration or in the Alternative Motion to Dismiss. ECF 13. Cendix opposed, arguing that it

never received the Terms and Conditions, that the Agreement has expired, and that the

arbitration clause is unconscionable. Opp'n, ECF 13 at 5–12.

## DISCUSSION

Applying Oregon contract law, this Court finds that there was a valid agreement to

arbitrate. Cendix manifested assent to the arbitration clause, and there was consideration

underlying both the Agreement and the arbitration clause. This Court also finds that parties

clearly and unmistakably delegated issues of arbitrability to the arbitrator. Plaintiff's arguments

regarding the Agreement's duration and unconscionability are therefore disputes solely for

arbitration.

## A.  The Parties Agreed to Arbitration.

Plaintiff argues that, under Oregon law, there was no mutual assent to the arbitration

clause and no consideration for the Terms and Conditions containing the arbitration clause.

Opp'n, ECF 13 at 5–8. Plaintiff also argues that the Agreement expired on February 22, 2022,

leaving no surviving Terms and Conditions, and that the arbitration clause is unconscionable. *Id.*

at 8–12.

### 1.  Cendix manifested assent to the arbitration clause.

In support of its argument that there was no mutual assent to the arbitration clause,

Cendix argues first that "TSYS has not produced by a preponderance of the evidence that Cendix

actually received the Terms and Conditions containing the arbitration clause." *Id.* at 6. Defendant

argues that, in signing the Merchant Agreement, Cendix necessarily acknowledged that it

received and read the Terms and Conditions. Pet., ECF 11 at 8.

PAGE 5 – OPNION AND ORDER GRANTING MOTION TO COMPEL ARBITRATION

As with any other contract dispute, in analyzing an agreement to arbitrate, courts "first look to the express terms." *Chiron*, 207 F.3d at 1130. Under Oregon law,[2] when a contract "refers in specific terms to another writing, the other writing is a part of the contract." *Nw. Pac. Indem. Co. v. Junction City Water Control Dist.*, 295 Or. 553, 558 (1983). "It does not matter whether the writing to be incorporated is provided to the offeree, so long as the writing is available." *Bridgewell Res. LLC v. Tanamera Constr., LLC*, No. 3:20-CV-00518-YY, 2021 WL 3701360, at *14 (D. Or. June 1, 2021), *report and recommendation adopted*, 2021 WL 3215087 (D. Or. July 29, 2021); *see NW Pac.*, 295 Or. at 558 (finding writing was incorporated by reference when it was "available upon request"). Once a plaintiff concedes she has signed an agreement which incorporates by reference another writing, she cannot "come to Court and argue to the contrary." *Libby v. Keystone RV Co.*, No. 1:19-CV-00642-CL, 2019 WL 5541237, at *3 (D. Or. Oct. 25, 2019); *see also Brown v. BYRV, Inc.*, No. 3:14-CV-01213-AC, 2015 WL 4507159, at *8 (D. Or. July 24, 2015) (holding that once the plaintiff admitted to signing a form that specifically acknowledged that the signer had read a warranty, she could not argue that she lacked the opportunity to read the warranty).

The express terms of Cendix and TSYS's Agreement clearly and unequivocally referenced the Terms and Conditions: "By their execution below the undersigned parties agree to abide by the Merchant Transaction Processing Agreement . . . consist[ing] of the Merchant Application and *the Terms and Conditions (a separate attachment hereto)*, and MERCHANT

---

[2] In determining whether the parties have formed a valid contract, "federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F4th 849, 856 (9th Cir. 2022). Although the contract states that Nebraska law governs, ECF 11-3, Ex. B at 9, both parties' briefs include extensive citations to Oregon law and little discussion of Nebraska law on the issue of whether there was a valid agreement to arbitrate. This Court will therefore assume that Oregon law governs this dispute.

acknowledges it has received and read the Terms and Conditions at the time of signing."
Agreement, ECF 11-2, Ex. A at 4 (emphasis added). Plaintiff does not argue—nor could it—that
the Terms and Conditions were not clearly referenced in the Agreement.

Cendix does argue, however, that "it signed the Agreement without the Terms and
Conditions being disclosed." Opp'n, ECF 13 at 6. But whether the Terms and Conditions were
indeed separately attached to the Agreement is irrelevant, so long as they were otherwise
available to Plaintiff. *See Bridgewell*, 2021 WL 3701360, at *14. Defendant has nonetheless
offered evidence that, per its "consistent implementation of company standards" in entering into
agreements with new merchants, Plaintiff, as a new merchant, would have been provided with a
copy of the Terms and Conditions. Keryan Decl. ¶¶ 3 (explaining that "the application process
includes providing the merchant with a copy of . . . the TSYS Terms and Conditions.").

Plaintiff's argument that there was no mutual assent is therefore meritless. Under
Oregon's objective theory of contracts, mutual assent may be expressed through words or
"inferred from the actions of the parties." *Brown v. BYRV, Inc.*, 2015 WL 4507159, at *8
(quoting *Bennett v. Farmers Ins. Co. of Oregon*, 332 Or. 138, 148 (2001)). There is perhaps no
objectively clearer expression of mutual assent than a party signing an agreement,
acknowledging and agreeing to its terms. As Plaintiff has expressly acknowledged, it signed the
Agreement which incorporated the Terms and Conditions. Agreement, ECF 11-2, Ex. A at 4;
Zehr Decl., ECF 14 at ¶ 3. By so doing, Plaintiff affirmed having "received and read the Terms
and Conditions" at the time of signing and agreed to be bound by them. Agreement, ECF 11-2,
Ex. A at 4. Plaintiff cannot now "come to Court and argue to the contrary." *Libby*, 2019 WL
5541237, at *3.

2.  **There was valid consideration for the Terms and Conditions containing the arbitration clause.**

Cendix next argues that "no consideration was provided for [the Terms and Conditions]." Opp'n, ECF 13 at 8. "Consideration is the accrual to one party of some right, interest, profit or benefit or some forbearance, detriment, loss or responsibility given, suffered, or undertaken by the other." *Compton v. Compton*, 187 Or. App. 142, 149 (2003) (citation and internal quotation marks omitted). "[U]nder Oregon law, a mutual agreement to arbitrate is adequate consideration to enforce the Agreement." *Wilson v. Bristol-Myers Squibb Co.*, No. 3:17-CV-2054-SI, 2018 WL 2187443, at *4 (D. Or. May 11, 2018).

As Defendant points out, Cendix and TSYS each received consideration for the underlying Agreement, which incorporated the Terms and Conditions. In exchange for agreeing to the terms of the Agreement, including the Terms and Conditions, Cendix received payment processing services from TSYS. Pet., ECF 11 at 5; *see* Agreement, ECF 11-1, Ex. A; Keryan Decl. ¶¶ 3–5 (explaining that merchants must accept the Merchant Application and Terms and Condition to receive payment processing services). And in exchange for fees assessed on Cendix's customer transactions, TSYS provides payment processing services. Agreement, ECF 11-1, Ex. A, at 2–3, 9 (defining fees). Additionally, the agreement to arbitrate is mutual: it requires not only that Cendix arbitrate any claims it may have against TSYS, but also that TSYS arbitrate any claims it may have against Cendix. There is valid consideration.

3.  **Challenges to the duration and unconscionability of the agreement are questions for the arbitrator.**

Under the FAA, a district court determines (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). Federal law governs the

arbitrability of valid arbitration agreements covered by the FAA.[3] *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015).

Courts have recognized that "parties can agree to arbitrate gateway questions of arbitrability." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (internal quotation marks omitted). The parties can agree that the question of whether the parties have submitted a particular dispute to arbitration will, like any other question, be decided by an arbitrator. *See id.* Courts should presume, however, that they determine arbitrability unless the parties present "clear and unmistakable evidence" demonstrating otherwise. *Brennan*, 796 F.3d at 1128.

A delegation clause expressly delegating exclusive authority to an arbitrator constitutes clear and unmistakable evidence of an agreement to delegate. *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021); *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011). Expressly incorporating the American Arbitration Association's (AAA) arbitration rules also constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013); *Brennan*, 796 F.3d at 1130. When an arbitration agreement contains a delegation provision, the district court can only review challenges to *that* provision, not the arbitration agreement as a whole. *Rent-A-Ctr.*, 561 U.S. at 72–73. Even the gateway questions in deciding whether to compel arbitration—whether there

---

[3] The FAA covers all contracts "evidencing a transaction involving commerce." *Chiron Corp.*, 207 F.3d at 1130. Federal law governs the question of arbitrability except where the parties have "clearly and unmistakably designated that nonfederal *arbitrability* law applies." *Brennan*, 796 F.3d at 1129 (emphasis in original). Although the Terms and Conditions state that Nebraska law applies to "all matters . . . arising out of or relating to this Agreement," ECF 11-3, Ex. B at 9 (capitalization altered), the Terms and Conditions do not explicitly state whether Nebraska or federal law governs the question of arbitrability. Because there is ambiguity as to whether the question of arbitrability is governed by Nebraska law, there is not "clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability law." *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 921 (9th Cir. 2011) (internal quotation marks omitted). This Court will therefore apply federal arbitrability law.

was an agreement to arbitrate and whether the agreement covers the dispute—can be delegated to the arbitrator. *Brennan*, 796 F.3d at 1130.

### a.  The parties agreed to arbitrate arbitrability.

This Court concludes that the parties agreed to arbitrate issues of arbitrability.  The arbitration agreement provides: "[A]ny dispute regarding, arising, or relating to this agreement . . . *including the scope and validity of this agreement . . .* (including the validity and scope of the arbitration obligations under this section, which the parties acknowledge is to be determined by an arbitrator and not a court), *must be exclusively resolved by binding arbitration*." Terms and Conditions, ECF 11-3, Ex. B at 9 (capitalization altered and emphasis added). This delegation provision constitutes clear and unmistakable evidence that parties agreed to delegate issues of its "scope and validity" "exclusively" to the arbitrator.

The arbitration clause further states: "[A]rbitration shall be decided by a panel of three (3) arbitrators to be selected in accordance with the American Arbitration Association's Commercial Arbitration Rules." ECF 11-3, Ex. B at 9. As the Ninth Circuit has held, incorporation of the AAA's arbitration rules is also "clear and unmistakable" evidence of agreement to arbitrate arbitrability.

### b.  Contract duration and unconscionability are arbitrable.

Having concluded that the arbitration agreement clearly and unmistakably delegates enforceability disputes to the arbitrator, the only remaining question is whether Cendix's expiration and unconscionability challenges are arbitrable.

First, Cendix argues that, because the Agreement is a three-year contract that was signed on February 22, 2019, "the contract terminated or expired on February 22, 2022 including all its Terms and Conditions." Opp'n, ECF 13 at 8–9. Thus, Plaintiff argues, "[t]here is no binding

arbitration clause, jurisdiction, venue, or choice of law issues." *Id.* at 9. This challenges the

Agreement as a whole, not the delegation provision, so it can be and was delegated to an

arbitrator. Further, whether the agreement expired after three years or not goes directly to its

scope and validity—a question "exclusively" for the arbitrator.

Cendix also argues that the arbitration clause is unconscionable. *Id.* at 10–12. But

Cendix's challenge is brought against the arbitration agreement as a whole, not against the

delegation provision. To successfully challenge a delegation provision on unconscionability

grounds, the Ninth Circuit has recently explained that "the party resisting arbitration must

specifically reference the delegation provision and make arguments challenging" its

unconscionability. *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1011 (9th Cir. 2023); *see also Gozzi*

*v. W. Culinary Inst., Ltd.*, 276 Or. App. 1, 14 (2016) ("[U]nless the plaintiff challenged the

delegation provision specifically, [courts] must treat it as valid under section 2, and must enforce

it, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." (cleaned

up)).

Cendix offers no arguments specific to the delegation provision. Opp'n, ECF 13 at 10–

12. Without a challenge to the delegation provision itself, this Court cannot reach Cendix's

unconscionability argument because the arbitration clause delegates that dispute to the arbitrator.

Accordingly, the Agreement's duration and unconscionability are issues for the arbitrator, not

this Court.

**B. The Parties' Agreement Encompasses the Dispute.**

The arbitration clause unambiguously states that "any dispute" relating to the Agreement

must be exclusively resolved by binding arbitration. Terms and Conditions, ECF 11-3, Ex. B at

9–10. Neither party disputes whether the arbitration agreement, if valid, would encompass the

underlying case. To the contrary, Plaintiff implicitly acknowledges that the dispute would be

PAGE 11 – OPNION AND ORDER GRANTING MOTION TO COMPEL ARBITRATION

subject to arbitration if the agreement is valid. *See* Opp'n, ECF 13 at 11. Cendix's claims—that TSYS took and held money from it—are governed by the Agreement, which contains the terms setting out TSYS's services and fees. The Agreement thus encompasses the dispute.

## C.  Defendant's Alternative Motion to Dismiss is Denied as Moot.

Defendant moves in the alternative to dismiss Cendix's claims under Federal Rule of Civil Procedure 12(b)(6). Pet., ECF 11 at 7. Because this Court grants Defendant's Motion to Compel Arbitration, it dismisses Defendant's Motion to Dismiss as moot.

## CONCLUSION

Defendant's Motion to Compel Arbitration, ECF 11, is GRANTED. This action is STAYED pending arbitration.

**IT IS SO ORDERED.**

DATED this 7th day of October, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge